term "furniture," which means "that which furnishes or whatever is added to the interior of a house for use or convenience," (*Bell* v. *Golding*, 27 Ind. 179; *Crossman* v. *Baldwin*, 49 Conn. 491; Burrill, Law Dict. p. 33,) and includes brass-work, knobs, window shutters, etc., (Worc. Dict.) In *Shaw* v. *Lenke*, 1 Daly, 487, "gas fixtures" are included in the terms "articles of furniture movable in their nature," although attached by screws, nails, brackets, etc. See, also, *Lawrence* v. *Kemp*, 1 Duer, 363; *McKeage* v. *Insurance Co.*, 16 Hun, 239, affirmed 81 N. Y. 38. In *Carnagy* v. *Woodcock*, 2 Munf. 234, the phrase "household goods" is defined as more comprehensive than "furniture," including everything in and about the house that has usually been held and enjoyed therewith, and would tend to the comfort and accommodation of the householder. See, also, 9 Amer. & Eng. Enc. Law, 782, note 3; *Paton* v. *Sheppard*, 10 Sim. 186; *Manning* v. *Purcell*, 2 Smal. & G. 284. The expression "household goods" includes every article of personal property in the house or on the premises intended for ornament, use, or consumption, (*Dayton* v. *Tillou*, 1 Rob. N. Y. 21,) even coal and wood provided for the use of the family, (*In re Fraser*, 92 N. Y. 239.) These articles do not lose their generic character by being placed in a saloon or store, unless the intention to exclude them from the operation of the term "household goods" is made apparent, and that is not so here. It is the species of property, rather than the temporary use made of it, that determines its true character under the statute. So considered, it follows that "gas fixtures" are, by force of the acts of 1885 and 1886, *supra*, taken out of the operation of the act of 1884, *supra*, requiring conditional sale agreements to be filed. The acts of 1885 and 1886 were passed in the interest of those who sell "household goods" on the installment plan, and must be liberally construed to effectuate their purpose. The objection that a duplicate copy of the agreement was not delivered to Wolff was not made at the trial, when it might have been obviated, and cannot be raised for the first time now. Cases cited in *Furguson* v. *Investment Co.*, (City Ct. N. Y.) 11 N. Y. Supp. 738. If the construction aforesaid be correct, the verdict in favor of the plaintiff was properly directed, and the motion for a new trial must be denied.

---

### GOULD *v.* WALBRIDGE.

*(Superior Court of New York City, General Term. March 14, 1892.)*

CORPORATIONS—RENDITION OF STATEMENTS—ACTION FOR PENALTY.

In an action against the treasurer of a manufacturing corporation to recover a penalty for failure to render a statement of the affairs of the company to a stockholder, the only question was as to whether the treasurer had been properly elected such, and, the evidence on that point being conflicting, the finding of the jury was conclusive.

Appeal from jury term.

Action by John H. Gould against Frank E. Walbridge. From a judgment for plaintiff, defendant appeals. Affirmed.

Argued before SEDGWICK, C. J., and GILDERSLEEVE, J.

*E. L. Collier*, for appellant.    *Beattys & Low*, for respondent.

GILDERSLEEVE, J. This action was brought by the plaintiff to recover a penalty of $340, under section 27 of the manufacturing corporation act of 1848, and acts amendatory thereof and supplemental thereto, from the defendant, as treasurer of the John H. Gould Company, for not rendering to the plaintiff a statement of the affairs of said company when requested by plaintiff so to do. It is fully established by the pleadings and the evidence that the plaintiff was entitled to serve a notice to render a statement of the affairs of said company, and that he did duly serve such a notice on the defendant, as treasurer of the company, on July 2, 1890, and that defendant neglected to render such statement up to the 20th day of August, 1890, the day of the commencement of this action. The language of the statute is as follows: "Whenever

any person or persons owning five per cent. of the capital stock of any company not exceeding one hundred thousand dollars, or any person or persons owning three per cent. of the capital stock of any company exceeding one hundred thousand dollars, formed under the provisions of this act, shall present a written request to the treasurer thereof that they desire a statement of the affairs of such company, it shall be the duty of such treasurer to make a statement of the affairs of said company under oath, embracing a particular account of all its assets and liabilities, in minute detail, and to deliver such statement to the person who presented the said written request to said treasurer within twenty days after such presentation, and shall also, at the same time and place, keep on file in his office, for six months thereafter, a copy of such statement, which shall at all times during business hours be exhibited to any stockholder of said company demanding an examination thereof. Such treasurer, however, shall not be required to deliver such statement in the manner aforesaid oftener than once in any six months. If such treasurer shall neglect or refuse to comply with any of the provisions of this act, he shall forfeit and pay to the person presenting said written request the sum of fifty dollars, and the further sum of ten dollars for every twenty-four hours thereafter, until such statement shall be furnished, to be sued for and recovered in any court having cognizance thereof." The only questions in the case are purely questions of fact, and were correctly submitted to the jury by the learned trial judge in the following language: "Counsel have agreed that there are but two propositions in the case for you to consider. The first is, was the defendant treasurer of the company at the time when the notice was served upon him? Of course, if he was, he is liable, because the answer admits that he never gave the information desired until the books were handed to the president, which was about the 20th of August. If he was not treasurer, of course he was not liable. With respect to that, you can consider two questions: *First.* Was he elected treasurer? *Second.* Was the election by ballot? With respect to that, the evidence is conflicting. You have heard the testimony of Mr. Balestier and the plaintiff with respect to the method of election, and you have heard the testimony of the defendant and his secretary. You must determine from it whether or no this defendant was elected by ballot as treasurer of that company. If he was, then he became its treasurer, and continued so up to the time he was served with this notice, unless in the interval he resigned." The jury, by their verdict, on all the evidence, found that the defendant was duly elected treasurer, and that he continued to be such up to the time of the serving of the notice. This finding is conclusive. There are no exceptions to the admission or exclusion of evidence that are of sufficient importance to require discussion. The judgment and order appealed from are affirmed, with costs.

---

### FISKE *v.* ROGERS *et al.*

*(Superior Court of New York City, General Term.   March 14, 1892.)*

MECHANICS' LIENS—SUFFICIENCY OF NOTICE.

> Under Laws 1882, c. 410, § 1825, requiring that a notice of a lien on moneys due by the city of New York to a contractor shall state the amount of the lien, and from whom the same is due to claimant, a notice which states that the amount claimed was due by a contractor under a contract made with his agent, when the fact was that the alleged agent was a subcontractor, and not an agent, and that the money was due from him, and not from the contractor, is insufficient.

Appeal from judgment on report of referee.

Action by Joseph W. Fiske against John Rogers and others. From a judgment for plaintiff and for defendants other than Rogers, the said Rogers appeals. Reversed.

Argued before SEDGWICK, C. J., and DUGRO and GILDERSLEEVE, JJ.

*Dudley R. Horton,* for appellant.   *S. D. Sewards, Albert H. Atterbury, John Brooks Leavitt,* and *L. Laffin Kellogg,* for respondent.